BARRY E. COLLINS,

        Plaintiff,

v.                                            Case No. 04-C-0684

BUECHEL STONE CORP.,

        Defendant.

## DECISION AND ORDER

Plaintiff Barry E. Collins brought an action under Title VII of the Civil Rights Act of 1964. He alleges that his former co-workers at Buechel Stone Corp. racially and sexually harassed him, effecting his constructive discharge. Buechel has moved for summary judgment on all Collins' claims. Collins has not responded to the motion.[1] For the following reasons, Buechel's motion will be granted.

### FACTS

Buechel supplies natural stone to commercial and residential customers. (Scott Buechel Aff. ¶ 1.) On July 2, 2002, it hired Collins to work as a belt piler at its Fond du Lac location. It transferred him to forklift operator several weeks later. (Buechel Aff. ¶ 3; Geiser Aff. ¶ 2.) Collins worked the second shift, from approximately 3:00 p.m. to 1:30 a.m. (Buechel Aff. ¶ 3.) Collins is

---

[1]Buechel filed its motion on June 28, 2005. Pursuant to the court's Order of July 7, 2005, Collins' response was due on August 8, 2005.

a white man. All of Collins' co-workers were men (Collins Dep. at 80), and the majority of them were Hispanic, though there was one other white on the shift. (Collins Dep. at 82.)

When Collins was hired, Buechel informed him that it had a winter layoff program due to seasonal demand. In the winter of 2002, rather than have a total winter layoff, Buechel offered all its second-shift employees the opportunity to transfer to its Chilton facility to work through the winter uninterrupted. Collins declined this transfer because he did not have transportation to the Chilton facility. As a result, he was laid off on January 7, 2003, when the winter layoff began. (Buechel Aff. ¶ 5; Geiser Aff. ¶ 5.)

On or about March 10, 2003, Wendy Geiser, Buechel's Human Resources Director, called Collins to tell him that he was recalled to work effective March 13, 2003. (Buechel Aff. ¶ 6; Geiser Aff. ¶ 6.) Before his shift began on March 13, Collins called Geiser to inform her that he would not be returning to work due to harassment. (Geiser Aff. ¶ 6.) On the same day, Buechel received a copy of the discrimination charge Collins filed with the Wisconsin Department of Workforce Development–Equal Rights Division. (Buechel Aff. ¶ 8; Geiser Aff. ¶ 6.) Collins accused his Hispanic co-workers of subjecting him to racial and sexual harassment. Collins claimed that he had told his supervisors about the harassment but that it had continued, forcing him to leave Buechel's employment. (Collins Dep. at 49-52, 61.) The charge eventually developed into this case.

**ANALYSIS**

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"

2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend

3

each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed.R.Civ.P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality–either admissible documents or attested testimony, such as that found in depositions or in affidavits–demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms and conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986), the Supreme Court made clear that this language is not limited to economic or tangible discrimination. "The phrase terms, conditions, or privileges of employment," the Court held, "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women' in employment." *Id.* (internal quotation marks omitted).

4

Case 1:04-cv-00684-WCG   Filed 10/07/05   Page 4 of 7   Document 28

An employer may be liable for discrimination within the meaning of Title VII if an employee is subjected to a hostile work environment based on his race or sex. To recover, the employee must show that: 1) he was subject to unwelcome harassment; 2) the harassment was based on his race or sex; 3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and 4) there is a basis for employer liability. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998). The employer is essentially strictly liable if the employee's supervisor created the hostile work environment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-5 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 805-8 (1998). The employer is liable for a hostile work environment created by the employee's coworkers, however, only when the employee shows that his employer has "been negligent either in discovering or remedying the harassment." *Parkins*, 163 F.3d at 1032.

For discriminatory harassment to be actionable, "it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). Thus, "when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the working conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). "The harassment must be sufficiently severe that a rational trier of fact could find that it had actually changed the conditions of the plaintiff's workplace." *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 978 (7th Cir. 2000).

5

To establish a constructive discharge, an employee must show that the employer made the working conditions so intolerable that the employee was forced to resign. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 755 (7th Cir. 1993). A hostile-environment constructive discharge claim entails more than a hostile environment claim by itself. "A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 2354, 159 L. Ed. 2d 204 (2004). An employee's resignation is not truly voluntary if quitting is the only way the employee can extricate himself from the intolerable conditions. "But unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997).

Evidence in the record indicates that Collins was subjected to a variety of crude and juvenile harassment by his co-workers. Such behavior included touching of his crotch and buttocks (Collins Dep. at 35-6), having his shorts pulled down (*Id.* at 48-9), and having stones and mud balls thrown at him while he was driving a forklift. (*Id.* at 61-63.) Collins' Title VII claims falter, though, because no evidence indicates that the harassment was motivated by his race or sex. *See Patton v. Indianapolis Public Sch. Bd.*, 276 F.3d 334 (7th Cir. 2002) (holding that Title VII is not implicated where harassment is not based on a protected characteristic). The mere fact that most of the harassment was committed by persons of a race other than Collins' does not mean that race was the motivating factor. *See Mitchell v. Carrier Corp.*, 954 F. Supp. 1568, 1578 (M.D. Ga. 1995) (holding that mere fact that employee's recalcitrant subordinates were all of races different than his did not show that their misconduct stemmed from racial animus). Collins' co-workers might have

6

harassed him for any number of (bad) reasons. Nothing in the record suggests that the reasons were the impermissible ones of race or sex.[2]

## CONCLUSION

For the foregoing reasons, Buechel's motion for summary judgment is hereby **GRANTED.** The clerk of court shall enter judgment accordingly.

**SO ORDERED.**

Dated this   7th   day of October, 2005.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge

---

[2]Collins testified at his deposition that he believed that some, though not all, of this behavior was motivated by his race and/or sex. (Collins Dep. at 79-89.) A plaintiff's belief that harassment was racially or sexually motivated is insufficient to support a Title VII claim. *See Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir. 1978).

7

Case 1:04-cv-00684-WCG   Filed 10/07/05   Page 7 of 7   Document 28